1  Michael Paretti
   Nevada Bar No. 13926
2  Becca Wahlquist
   Admitted *pro hac vice*
3  SNELL & WILMER L.L.P.
   3883 Howard Hughes Parkway, Suite 1100
4  Las Vegas, NV 89169
   Telephone: (702) 784-5200
5  Facsimile: (702) 784-5252
   Email: mparetti@swlaw.com
6
   Attorneys for Defendant
7  Credit One Bank, N.A.

8
                    **UNITED STATES DISTRICT COURT**
9
                         **DISTRICT OF NEVADA**
10

11  BRANDON THOMPSON, on behalf of       CASE NO.:  2:20-cv-00266-GMN-EJY
    himself and all others similarly situated,
12                                        **MOTION TO STAY LITIGATION AND**
                  Plaintiff,              **DISCOVERY PENDING U.S. SUPREME**
13                                        **COURT'S DETERMINATION ON**
    vs.                                   **MEANING OF "ATDS" UNDER 47 U.S.C. §**
14                                        **227(a)**
    CREDIT ONE BANK, N.A.,
15
                  Defendant.
16

17        Defendant Credit One Bank, N.A. ("Credit One"), by and through its counsel, the law firm

18  of Snell & Wilmer L.L.P., hereby moves to stay this action pending the United States Supreme

19  Court's determination in *Facebook, Inc. v. Duguid.*, No. 19-511 (S. Ct.) ("*Facebook*"), petition

20  for certiorari accepted July 9, 2020.

21        Recognizing the impact of the Supreme Court's analysis of 47 U.S.C. § 227(b), under

22  which Plaintiff asserts his claims in this litigation, this Court previously stayed discovery pending

23  the Supreme Court's ruling on the constitutionality of Section 227(b). *See* ECF No. 26. Three

24  days after the Supreme Court found Section 227(b) of the Telephone Consumer Protection Act

25  ("TCPA") unconstitutional, and severed the offending provision, the Supreme Court granted

26  certiorari in *Facebook* to resolve the remaining and central question of what constitutes an

27  Automatic Telephone Dialing System ("ATDS") restricted by the TCPA.

28

The Supreme Court's determination on the ATDS question will resolve an issue central to any allegations of liability in this case and will impact whether Plaintiff's claims should be dismissed and, if not, what discovery would be appropriate.  A further delay to await this definitive ruling on TCPA Section 227(b) will pose no harm to Plaintiff, whose money-damages claims regarding the three text messages he received in 2017 and 2018 were not brought for fifteen months after receipt of the final text message and are minimal.  Moreover, a stay will eliminate the risk that the parties and Court will waste resources in burdensome litigation and discovery that may be proved needless by the Supreme Court's decision.  Thus, this putative class action case should be stayed for determination of the second question raised by *Facebook*'s certiorari petition, just as it was stayed while the Supreme Court determined *Facebook*'s first question on appeal that was answered in the *Barr* ruling.

This Motion is based upon the following memorandum of points and authorities, the papers and pleadings on file herein, and any oral argument that the Court may entertain.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As this Court is aware, in January 2020 the Supreme Court granted certiorari in *Barr v. American Assoc. of Political Consultants, Inc.*, case no. 19-631, to consider whether Section 227(b) of the TCPA was constitutional under the First Amendment.  On July 6, 2020, a plurality of justices found Section 227(b) unconstitutional, but as a remedy, severed language from that section instead of eliminating Section 227(b) as Justice Gorsuch argued in dissent should have been done.  **Three days** after its ruling in *Barr*, the Supreme Court accepted certiorari on the

---

[1] On July 10, Credit One's counsel emailed Plaintiff's counsel querying whether Plaintiff was agreeable to a stay pending disposition of *Facebook*. Credit One's counsel sent a follow-up email on July 13, 2020, again requesting Plaintiff's position of whether this action should be stayed pending disposition of *Facebook*.  On July 16, 2020, Credit One's counsel and Plaintiff's counsel conducted a telephonic meet and confer in good-faith to discuss a stay of litigation and the instant motion.  Plaintiff's counsel indicated they were not agreeable to a stay pending resolution of *Facebook* given the anticipated time before a decision is reached in that case. Accordingly, the parties could not reach a resolution without Court intervention and Credit One prepared this Motion.

**other** central question regarding Section 227(b) liability that had been brought by Facebook, Inc., in the two questions for the Supreme Court's review involving non-marketing text messages Facebook had sent to a customer-provided number. *See* Facebook Petition for Certiorari, attached as **Exhibit A**.[2]

The Facebook petition first raised the same constitutional challenge raised in *Barr*, and then asked the Supreme Court to determine what equipment would be encompassed within the definition of "ATDS" systems in Section 227(a) of the TCPA, given the circuit split on that question and the Ninth Circuit's outlier position that had been applied to Facebook's appeal in that Circuit. *See id.* at 2 (Question 2: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'use a random or sequential number generator.'").

The statutory definition of ATDS—and in particular, its "random or sequential number generator" language—has created much confusion and resulted in divergent opinions in the circuit courts. *Compare Dominguez v. Yahoo, Inc.* 846 F.3d 116 (3d Cir. 2018) (requiring random number generation); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020) (same); and *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) (same); with *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) (dialing numbers from a stored list sufficient) and *Duran v. La Boom Disco, Inc.,* 955 F.3d 279 (2d Cir. 2020) (same). *See also* Facebook's Supplemental Brief, filed on July 7, 2020, attached as **Exhibit B** (describing deepened Circuit split on ATDS). Taking up this question, the Supreme Court is now set to resolve the central question of Section 227(b) liability for use of an ATDS, given that the Third,

---

[2] Knowing that federal courts do not grant stays for Supreme Court decisions before a petition for *certiorari* has been granted by the Supreme Court, Credit One's earlier stay was not sought under *Facebook* as there was no certainty that *certiorari* would be taken—and indeed, had Section 227(b) been invalidated in *Barr*, there would have been no need for the Supreme Court to take up review of Facebook's second question on the meaning of ATDS. *See, e.g., A.M. by & through Deora v. Bridgecrest Acceptance Corp.,* No. 4:20-CV-00553-SEP, 2020 WL 3489280, at *3 (E.D. Mo. June 26, 2020) (granting stay for *Barr* and advising that another motion for a stay may be brought should certiorari be granted for *Facebook*, but that a stay for *Facebook* would be premature with no certiorari granted).

Seventh, and Eleventh Circuits have held that a system that does not randomly/sequentially generate and dial numbers is not considered to be sent via an "ATDS" restricted by the TCPA, but the Ninth and Second Circuits disagree.

The Supreme Court will settle the question of "what is an ATDS" for good, with a decision likely in the next six to seven months.[3]  Plaintiff, who waited **fifteen months** after receiving his third text message from Credit One to bring his putative nationwide TCPA class action, was in no rush to bring his statutory damages claims for the three text messages he received between October 2017 and December 2018.  Now, however, he will assert that he should not be required to wait to pursue classwide discovery on **all text messages sent by Credit One since February 2016**, even though the viability of his and his putative class members' claims will depend on the Supreme Court's determination concerning which side of the federal circuit court split is correct on the meaning of "ATDS" under the statute.  A stay of discovery in such circumstances to allow the Supreme Court to complete its review of Section 227(b) is the best course of action—particularly when, as detailed below, much of the discovery puts directly at issue the definition of "ATDS."[4]

The reasons for a stay at this time pending the Supreme Court's determination in *Facebook* are the same as those detailed in Credit One's previous motion seeking a stay while the Supreme Court determined Section 227(b)'s constitutionality in *Barr*.  First, no damage will result to either party if the Court enters a stay of litigation.  Second, Credit One will invariably suffer hardship or inequity if this action is not stayed because it would force Credit One to conduct discovery and motion practice in a putative nationwide class action when the significant

---

[3] The *Barr* petition was taken January 10, 2020, with a decision on July 6, 2020—a little under seven months all told, even with a two-week delay of oral argument given COVID-19 rescheduling.  The *Facebook* briefing and argument schedule has not yet been released, but briefing will be set to take place during the Court's summer recess, with an oral argument likely to be set in the Fall and a decision rendered in about the same time frame as in *Barr*—which would mean a ruling in early February.

[4] Indeed, even before this Court lifted the *Barr* stay [ECF No. 30] (and while Plaintiff had still not informed Credit One whether he would agree to a stay pending disposition of *Facebook* (see n.1)), Plaintiff served extensive classwide discovery on Credit One on July 13, 2020, seeking information on all text messages sent by Credit One since February 2016.

expenditure of resources involved in those battles could well prove to be unnecessary, should the Supreme Court agree that the kind of devices restricted by the TCPA as "ATDS" devices are those that randomly/sequentially dial numbers, as the Third, Seventh, and Eleventh Circuits have found. <u>Third</u>, a stay would serve the orderly course of justice measured in terms of the simplifying or complicating of issues of proof and questions of law which could be expected to result from a stay. Failing to wait for a ruling from the Supreme Court on this central issue of liability under Section 227(b)—the meaning of "ATDS"—will waste judicial and party resources and create procedural uncertainty and confusion, since Plaintiff's interpretation of "ATDS" may be fundamentally changed by the Supreme Court's opinion, and various other circuit courts have their own disparate interpretations of "ATDS" that will be resolved by the Supreme Court.

<u>Fourth</u>, and finally, even in the scant time since the *Facebook* petition was granted certiorari, other federal district courts have begun staying TCPA litigation based on this very issue. Those courts have found that the best approach is to wait for much-needed clarity from the Supreme Court to avoid wasting judicial and party resources. Credit One believes that this Court should make this same finding and stay further proceedings until the Supreme Court, in *Facebook*, determines what dialing equipment Section 227(b) actually regulates.

## II.     <u>BACKGROUND</u>

Plaintiff alleges that between October 26, 2017, and December 7, 2018, Credit One sent him three text messages to his cellular phone. Pl.'s Compl., ECF No. 1, at ¶¶ 40-42.[5] Plaintiff asserts that all of Credit One's text messages are "robocalls" restricted by Section 227(b) of the TCPA. *Id.* at ¶¶ 3, 34, 44. Thus, alleging that an "ATDS" was used to call him (*see id.*) and that Credit One lacked his prior consent for the text messages, Plaintiff alleges the three text messages he received violate the TCPA and purports to bring this action individually on behalf of all others similarly situated, consisting of:

---

[5] Credit One has filed its response to Plaintiff's complaint, challenging Plaintiff's Article III standing to sue for the receipt of three transactional text messages sent in that 14-month period, and also move to strike Plaintiff's class allegations. That Motion has yet to be ruled upon, which is another reason that a stay pending *Facebook* would be beneficial, if the Court wishes to defer consideration of the standing question before any further proceedings ensue.

> All persons in the United States to whose cellular telephone number Credit One and/or its agent(s) sent a non-emergency text message within 4 years of the Complaint in this action **through the utilization of any automatic telephone dialing system** without said person's prior express consent.

*Id.* at ¶ 51 (emphasis added).   The "utilization of any automatic telephone dialing system" ("ATDS") in calls to a putative class member is thus a central requirement for class membership. *Id.*

## III.   ARGUMENT

A district court has discretionary power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which near upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  Some of the factors the Court weighs in deciding whether to stay a pending proceeding are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  All of the *Landis* factors favor entering a stay here.

**A.      No Damage to Plaintiff Will Result from the Court Entering a Stay of Litigation.**

Plaintiff will not suffer damage or harm if the court enters a stay of litigation. He waited until February 6, 2020 to bring his claims fifteen months after he claims to have received two text messages at issue (December 6 and 7, 2018 (*see* Compl., ECF No. 1, at ¶¶ 41-42)), and over two years after receiving the first text on October 26, 2017 (*see* Compl., ECF No. 1, at ¶ 40).  Thus he cannot argue that speed is suddenly of an essence here.

Moreover, Plaintiff is seeking money damages in the form of statutory damages.  Compl., ECF No. 1, at ¶¶ 73-74 and 12:3-8. A delay in receiving statutory damages is not a sufficient reason to deny a *Landis* stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962) (holding

1    that where the party opposing the stay seeks money damages, a delay in recovery of damages "is

2    not the kind of prejudice which should move a court to deny a requested postponement").

3         Plaintiff's counsel have indicated they do not want to wait to see what the Supreme Court

4    finds, and want to press forward with their classwide discovery requests seeking extensive

5    records and information from Credit One on behalf of a nationwide class (members of which

6    would reside in federal circuits in which courts have found that targeted calls to customer-

7    provided numbers are not placed with an ATDS).  However, because delay is inherent in any stay,

8    arguments of delay cannot alone preclude a stay.  *See, e.g., Johnson v. Five Points Ctr., LLC,* No.

9    18-CV-05551-JSC, 2019 WL 3503045, at *1 (N.D. Cal. Aug. 1, 2019) (staying case to await

10    Ninth Circuit's decision in related cases that could affect merits determinations, and affirming

11    that "delay alone does not constitute prejudice").

12         Given Plaintiff's own delay in filing his lawsuit, Plaintiff is not at risk for hardship or

13    prejudice from a further delay to allow the Supreme Court to resolve an issue fundamental to this

14    case.  This case is still in its infancy, with a motion to dismiss for lack of standing pending, and

15    with discovery barely set to commence.  The Court and the parties will benefit from a ruling from

16    the United States Supreme Court that will potentially dispose of this litigation or limit issues for

17    discovery, dispositive motion practice, and if necessary, trial.

18         Plaintiff's desire to pursue his own statutory damages (capped at $1,500 each, or $4,500

19    total if he is able to prove both liability and willfulness), and his real desire to certify a nationwide

20    class putting what he hopes would be tens or hundreds of millions of dollars at issue, should not

21    require Credit One and this Court to undergo the rigors of class discovery and the inevitable

22    discovery battles at this time, and to proceed forward under unclear questions of "what is an

23    ATDS," when that question central to the parties' dispute will be settled by the Supreme Court in

24    the near future.  *See Johnson,* 2019 WL 3503045, at *1 ("proceeding on the . . . practices issue

25    while the Ninth Circuit is considering the legality of the very practice challenged here would be

26    inefficient and potentially lead to inconsistent results.").

27

28

**B.      On the Other Hand, Credit One Would Suffer Hardship and Inequity if the Case is Not Stayed.**

Credit One would suffer inequity if it is forced to spend money and expend significant human and technological resources to proceed to defend a putative class action case that might be resolved or significantly narrowed as a result of the Supreme Court's ruling.  Indeed, Courts have found the second *Landis* factor is satisfied when a defendant can demonstrate that failing to stay the case could deprive the defendant of the opportunity to wait for another case on a potentially controlling point of law.  *See Minor v. FedEx,* 2009 WL 1955816, at *1 (N.D. Cal. July 6, 2009) ("it certainly appears to be a hardship to conduct pointless discovery that may well be moot following a holding in *Brinker*."); *see also Gong-Chun v. AETNA, Inc.,* 2010 WL 1980175 at * 4 (E.D. Cal. 2010) (finding second *Landis* factor met and that defendant had made out a "clear case of hardship" where pending decision could render discovery inefficient or pointless).

Here, on July 13, 2020 (before responding to Credit One's request to stay), Plaintiff served discovery not just about the three text messages he had received, but asking for information on every text message "sent with an ATDS" **since February 2016** by a national bank with millions of customers.  The definition of "automatic telephone dialing system" is central to interpreting and responding to that discovery, as detailed in the examples below.  It would waste resources for the parties to debate sufficiency of discovery responses stemming from the parties' central disagreement about the meaning of "ATDS" or "automatic telephone dialing system," when that term is set to be definitively interpreted by the Supreme Court.

Plaintiff's discovery puts the "what is an ATDS" question squarely at issue and demonstrates why a stay is necessary.  For example, Plaintiff's interrogatories seek information on the number of calls and texts Credit One sent/placed since February 2016 with an "ATDS":

>State how many cellular telephone numbers you have called, or sent text messages to, during the past four years prior to the date of the Complaint filed in this action **using an automatic telephone dialing system**.

*See* excerpts from Plaintiff's First Set of Interrogatories to Credit One, attached as **Exhibit C**, at Interrogatory No. 3 (emphasis added).  Plaintiff further asks Credit One to identify each person

who received a text message meeting several qualifications—including being sent "**through utilization of any automatic telephone dialing system**"—and asks for the date of each text, the telephone number texted, and further detailed information.  *Id.*, at Interrogatory No. 2 (emphasis added).  The burdens on Credit One of having to respond (and object) to such discovery are apparent when "ATDS" lacks a uniform definition in federal circuit cases, and when the Supreme Court's determination of an ATDS could give Credit One a complete defense to Plaintiff's own claims.

Plaintiff, who received three text messages in 2017 and 2018 and alleges that an ATDS was used to place those texts, wants to question Credit One—a bank with millions of customers—about every text it has sent since February 2016, asking it to admit to use of an ATDS or describe use of an ATDS, when the definition of ATDS is completely unsettled but soon to be determined. For example, Plaintiff seeks information on **every text message sent for any reason since February 2016** by a national bank with millions of customers.  When Credit One responds that it did not use an ATDS in any texts (and so has nothing to produce), and Plaintiffs claim in turn that any system that can store information is an ATDS (a definition of ATDS that is now being reviewed by the Ninth Circuit in the *Facebook* matter), this Court would be asked to weigh in on "what is an ATDS" with a ruling that could well be inconsistent with that entered just months later by the Supreme Court.

To illustrate the burdens on Credit One of proceeding while the definition of "ATDS" is unsettled, the best example is Plaintiff's Request for Production 15, which seeks:

> The complete database tables showing the date, time, substance and other text details for (1) All persons in the United States (2) to whose cellular telephone number Credit One and/or its agent(s) sent a non-emergency text message (3) **within 4 years of the Complaint in this action** (4) **through the utilization of any automatic telephone dialing system** (5) without said person's prior express consent. If this request is impossible to satisfy, produce electronic information in CSV format sufficient to show as much of the following as possible: (a) all text messages made by or on Credit One's behalf, at any time during the "relevant time period", using the system used to text 954-913-8965, (b) the telephone number to which each such call was made, (c) the substance of any form messages used in the text (d) the name of the

person texted, (e) disposition codes for each text, (f) the date and time of each text, (g) the address of each person texted, (i) whether the person texted had previously asked that they not be texted, and (j) whether the person texted was not the person alleged to owe the debt in question. If you contend that a response to this request is not possible, please explain why with specificity.

*See* excerpts from Plaintiff's First Set of Requests for Production of Documents to Credit One, attached as **Exhibit D**, at RFP No. 15 (emphasis added).  This request (as with much of Plaintiff's proposed discovery) shows that discovery disputes in this litigation will hinge on the definition of "ATDS" (as well as on individualized issues of consent that also make responding to such a request impossible), and there well could be inconsistent rulings should the Court proceed with determining discovery disputes under a definition of ATDS (*i.e.*, a system that stores numbers) that later may be found invalid.  And it is not insignificant amounts of data sought from the Bank's proprietary and secure systems with such requests—as Plaintiff's counsel here knows from earlier attempt to certify ATDS claims against Credit One in a Florida class action, records relating to communications with customers at numbers they provided Credit One involve *billions* of data fields.

The Supreme Court is currently considering what dialing equipment could lead to potential liability to Plaintiff under the TCPA in this case, and that decision will impact how this Court should address disputes between the parties over discovery as well as over liability under Section 227(b).  If the Supreme Court agrees that any device that can store numbers is an ATDS restricted by the TCPA then Credit One would know how to respond to Plaintiff's discovery requests with a set definition of "automatic telephone dialing system" in place.  But in the event the Supreme Court agrees with the majority of Circuit courts that an ATDS claim depends on the use of a random/sequential number generator, Credit One would be able to establish that it has no information to produce relevant to "using an ATDS" and instead would have a complete defense to Plaintiff's claims.

It thus would harm Credit One to force it to conduct discovery and motion practice at this juncture when the significant expenditure of resources involved in those battles could well prove to be unnecessary. *See, e.g. Larroque v. First Advantage Lns Screening Sols., Inc.*, 2016 WL

39787 at *2 (N.D. Cal. Jan. 4, 2016) (holding that the defendant will suffer significant hardship if the case is not stayed because it will be required to engage in expensive discovery and briefing that may be rendered moot.).  A young case, at least from the standpoint of litigation efforts, if not time alone, favors staying this action. *See Seefeldt v. Ent. Consulting Intl., LLC.*, 4:19-cv-00188, 2020 WL 905844, at *3–4 (E.D. Mo. Feb. 25, 2020); *St. Louis Heart Ctr, Inc. v. Athenahealth, Inc.*, 2015 WL 6777873 at *5 (E.D. Mo. Nov. 4, 2015) (staying a TCPA action where a Supreme Court decision was pending for, amongst other reasons, the "very young" age of the case that had not yet conducted much discovery and had not yet litigated substantive issues).

The second *Landis* factor thus supports Credit One's Motion.

**C.** **A Stay Will Likely Simplify the Issues of Proof and Questions of Law.**

The third consideration is whether a stay would serve the "orderly course of justice measured in terms of the simplifying or complicating of issues of proof and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.2d at 1110. This factor is satisfied where the resolution of a case hinges on the interpretation of a federal agency regulation, and a stay will enable the district court to await a final interpretation of the regulation. *See Calif. Dept. of Water Resources v. Powerez*, 653 F. Supp. 2d 1057, 1066 (E.D. Cal. Sept. 4, 2009).

Here, failing to wait for a ruling from the Supreme Court on this central issue of TCPA liability will likely waste judicial resources and create procedural uncertainty and confusion in discovery (as discussed above), since the definition of "ATDS"—use of which is a central element of any Section 227(b) claim—will be determined and settled by the Supreme Court's opinion. Moreover, entering a stay will help ensure the uniform and national interpretation of TCPA cases and will minimize inconsistent rulings. The Court and the parties should not invest resources in discovery battles, or siding with one line of cases or the other, when the Supreme Court will determine the scope of the TCPA's restrictions.

**D.** **Other Courts Have Already Begun Staying Proceedings Pending the Supreme Court's Ruling in *Facebook*.**

Other courts faced with TCPA claims alleging use of an ATDS and requests for stays pending the Supreme Court's ruling already have agreed to stay the cases in the interest of

judicial economy.  This, too, favors entering the stay to preserve judicial resources.  For example, on July 14, 2020, the Eighth Circuit agreed to hold in abeyance the appeal in a TCPA case involving Section 227(b) liability pending the Supreme Court's decision in *Facebook*.  *See Beal v. Outfield Brew House, LLC*, No. 20-1961 (8th Circuit, July 14, 2020) (Entry ID: 4933647).  And in another putative nationwide class action regarding text messages sent by a national bank allegedly with an ATDS, a district court within the Ninth Circuit agreed that proceedings should be stayed pending a decision on the merits in *Facebook*.  *See Young v. Bank of America N.A.*, Case. No. 4:19-cv-03867-JST (N.D. Cal., July 15, 2020) (ECF No. 31 at 5).

In the Eastern District of California, a federal court that stayed a TCPA action to await a ruling in *Barr* (*see Hoffman v. Jelly Belly Candy Co.*, 2020 U.S. Dist. LEXIS 112663, No. 2-19-cv-01935-JAM-DB (E.D. Cal. Jun. 26, 2020)), noted in that earlier order that the *Facebook* certiorari petition, if taken, would also have significant impact on the plaintiff's claims that he received text messages sent with an ATDS.  *Id.* at *6.  Consequently, on July 17, 2020, that Court decided that the stay in place for *Barr* for claims brought under Section 227(b) should continue until *Facebook* has been decided by the Supreme Court.  *See Hoffman v. Jelly Belly Candy Co.*, Case No. 2-19-cv-01935-JAM-DB (Dkt. No. 22).  A similar ruling is the most efficient and proper course of action here.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## IV.     CONCLUSION

        Credit One respectfully requests that the litigation be stayed pending the Supreme Court's ruling in *Facebook, Inc. v. Duigid.*, cert. granted July 9, 2020, case no. 19-631, and that the parties be ordered to file a joint status report within two weeks of the conclusion of the *Facebook* case.

DATED: July 20, 2020                              SNELL & WILMER L.L.P.


                                                  By: */s/ Michael Paretti*
                                                      Michael Paretti
                                                      Nevada Bar No. 13926
                                                      Becca Wahlquist
                                                      Admitted *pro hac vice*
                                                      3883 Howard Hughes Parkway
                                                      Suite 1100
                                                      Las Vegas, Nevada 89169

                                                      *Attorneys for Defendant Credit One Bank, N.A.*

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen

3   (18) years, and I am not a party to, nor interested in, this action.  On this date, I caused to be

4   served a true and correct copy of the foregoing **MOTION TO STAY LITIGATION AND**

5   **DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING**

6   **OF "ATDS" UNDER 47 U.S.C. § 227(A)** by the method indicated:

7

8
☒           **BY ELECTRONIC SUBMISSION:**   submitted to the above-entitled Court for
            electronic filing and service upon the Court's Service List for the above-referenced
9           case.

10          DATED this 20th day of July, 2020.

11

12                                    */s/ Michael Paretti*
                                    An Employee of Snell & Wilmer L.L.P.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 14 -

1

## INDEX OF EXHIBITS

2

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| A | Facebook Petition for Certiorari | 53 |
| B | Facebook's Supplemental Brief | 16 |
| C | Excerpts from Plaintiff's First Set of Interrogatories to Credit One | 4 |
| D | Excerpts from Plaintiff's First Set of Requests for Production of Documents to Credit One | 4 |

3

4

5

6

4846-5258-5411

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28