Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
E-mail: gustavo@kazlg.com

Heather H. Jones, Esq.
*(Pro Hac Vice)*
**THE CONSUMER PROTECTION FIRM, PLLC**
4030 Henderson Blvd.
Tampa, FL 33629
Telephone: (813) 500-1500;
Facsimile: (813) 435-2369
E-mail: heather@theconsumerprotectionfirm.com

*Attorneys for Plaintiff, Brandon Thompson*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BRANDON THOMPSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CREDIT ONE BANK, N.A.,<br><br>Defendant. | Case No.: 2:20:CV-00266-GMN-EJY<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS  UNDER 47 U.S.C. §227(a)** |

Plaintiff Brandon Thompson ("Plaintiff") hereby submits his opposition to Defendant Credit One Bank N.A. ("Defendant") Motion to Stay Litigation and Discovery Pending U.S. Supreme Court's determination of the meaning of "ATDS" under 47 U.S.C. §227(a). This opposition is based on the following memorandum of points and authorities.

## I. INTRODUCTION

The United States Supreme Court eloquently captured our country's sentiment last month with regards to the extreme nuisance of automated communications stating, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *William P. Barr v. American Association of Political Consultation* 2020 U.S. LEXIS 3544, (U.S. July 6, 2020). This united distain for automated communications is caused by companies like Defendant who wantonly violate the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA") by repeatedly robocalling without legitimate reason to do so. In this case, the Defendant sent autodialed debt collection text messages (which are recognized as telephone calls by applicable FCC regulations) to Plaintiff although Plaintiff had no business relationship with Defendant and never owed Defendant a dime. The illegal text messages included information about an unknown credit card "VISA—4330," a false accusation that Plaintiff was "past due," and a demand for payment to CreditOneBank.com. Later, Plaintiff received a text message with an admission by Defendant that its prior text messages were sent without the requisite prior express consent and an instruction to "disregard" them. (Doc. 1, p. 6, l. 21- p. 7, l. 4).

This reckless behavior of robocalling[1] numbers without consent (commonly referred to as "wrong numbers") is unfortunately a frequent business practice by Defendant. Indeed, the case at bar reflects a continuation of Defendant's unlawful conduct in violation of the TCPA that was previously exposed when Defendant was ordered to produce a sample of data from a prior class action lawsuit entitled *Bridge v. Credit One* 2:14-cv-0512-LDG-NJK. In that case, it was established that Defendant made 350,000,000 robocalls in a 34-month period and was forced to admit robocalling approximately 3,500,000 people in violation of the TCPA even though the numbers in

---

[1] The Supreme Court recognizes text messages are treated the same as robocalls pursuant to the TCPA. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, (2012)

question had the disposition code "Wrong Number" or "Block/DNC Ever" in Defendant's own records.

Wishing to evade the consequences of its consistent unlawful conduct, on March 16, 2020, Defendant sought a stay of this action, relying on the highly improbable prospect that *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. ___ (2020) would limit the litigation in this matter by declaring the entire TCPA unconstitutional. This Court stayed litigation pending the *Barr* decision. (Dkt. No. 26). Subsequently, on July 6, 2020, the Supreme Court issued its decision in *Barr*, stating "that the 2015 government-debt exception added an unconstitutional exception" to the TCPA, and that "severing it from the remainder of the statute" was the appropriate remedy. *See Barr* at 34 (U.S. July 6, 2020) ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute.") Following the Supreme Court's opinion in *Barr*, on July 13, 2020 the parties filed a Joint Status Report informing the Court of the decision and stating that the *Barr* decision did not impact Plaintiff's claims in this action. (Dkt. No. 28). Now, Defendant seeks **yet another stay on improbable grounds**, **this one effectively indefinite**, based upon the speculative notion that the Supreme Court's decision in *Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511 (cert. granted July 9, 2020) will render all robocalls legal, including the scam robocalls and scam text messages.  This successive and immoderate requested stay should not be granted.

To start with, Defendant's motion cites to the seminal United States Supreme Court case in the area of stays, *Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936), but mysteriously fails to mention one of its most significant pronouncements, namely that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will

- 3 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY
PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

define the rights of both." Defendant's present motion comes nowhere near meeting this exacting, "rare" standard.

Indeed, Defendant's arguments are entirely based on the speculative hypothesis that, as a result of Supreme Court review in *Facebook*, Defendant is likely to benefit from a tremendous windfall to its legal position in this case through the wholesale invalidation of the prohibition against autodialed calls found in the TCPA. The Court's consideration of this new stay motion should be informed by the Defendant's prior stay motion, where Defendant similarly (and incorrectly) prognosticated that the Supreme Court's *Barr* decision would terminate this litigation in Defendant's favor. Moreover, what Defendant leaves out of its analysis is that the TCPA, which was enacted in 1991, has had a long-standing, history of being applied to devices that use lists of stored numbers. The well-reasoned *Marks v. Crunch San Diego*, LLC, 904 F.3d 1041, 1043 (9th Cir. 2018) has continued this trend even post *ACA International* and is also in the majority on this issue. Further, Defendant will not suffer any prejudice by the case continuing because the discovery and motion practice will still have to move forward no matter what ATDS standard prevails.

As such, Defendant's motion to stay litigation of this action should be denied in its entirety.

## II.   LEGAL STANDARD

As a general matter, stays of the kind requested by Defendant are significantly disfavored. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). The moving party "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. The Supreme Court cautioned that due to the "likelihood or danger or abuse . . . there is no power by a stay to compel an

unwilling litigant to wait upon the outcome of a controversy to which he is a stranger." *Id.* at 256 (citing *Dolbeer v. Stout*, 136 N.Y. 486, 489; *Rosenberg v. Slotchin*, 181 App. Div. 137, 138; *Wadleigh v. Veazie*, Fed. Cas. No. 17,031; *Checker Cab Mfg. Co. v. Checker Taxi Co.*, 26 F.2d 752; *Jefferson Standard Life Ins. Co. v. Keeton*, 292 F 3d. 53 (1923)).

There is a presumption that Defendant's requested stay should be denied, a presumption which Defendant has the burden of overcoming. *See Lockyer v Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "The proponent of a stay bears the burden of establishing its need." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *Clinton v. Jones*, 520 U.S. 681, 708 (1997). While this burden may be met in certain situations, Plaintiff respectfully submits to the Court that the circumstances here do not warrant deviating from federal and local default rules. Therefore, this Court should deny Defendant's Motion since the current action is not one of the "rare circumstances" that warrant Defendant's requested stay.

## III.   ARGUMENT

As discussed further herein, this Court should deny Defendant's Motion to Stay based on controlling authority in the Ninth Circuit's consistent definition of an ATDS is unlikely to be narrowed.

All applicable factors weigh in favor of allowing Plaintiff to litigate his case and to deny Defendant's motion: (a) this Court should follow the many other district courts that have denied motions to dismiss in cases with similar facts to this case (b) the Supreme Court is unlikely to narrow the definition of an ATDS, (c) regardless of the Supreme Court's ruling in *Facebook* it will not have a dispositive effect on this case, (d) justice will be promoted by allowing the case to proceed and a stay would not simplify any issues, (e) Plaintiff will suffer prejudice if the case is stayed, and (f) Defendant will not be harmed by allowing this case to proceed.

- 5 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY
PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

### A. This Court Should Follow Other Courts In Denying A Stay In Similar Cases.

Defendant's request to stay the proceedings should be denied just as similar requests have been denied in numerous similar cases. *See*, *e.g.*, *Bowden v. Bright House Networks*, No. 2:16-CV-1237-VEH, 2017 U.S. Dist. LEXIS 1400, at *5 (N.D. Ala. Jan. 5, 2017) ("Having carefully considered all the arguments of the parties, the court finds that a stay is not appropriate in this case. The Defendant has failed to meet its burden to show that the harm to it from the litigation's proceeding outweighs the Plaintiff's (and the public's) right to a prompt resolution of this matter."); *Klein v. Hyundai Motor Finance*, 8:16-CV-01469-JLS-JCGx (C.D. Cal. Memo. Op. & Order dated Dec. 6, 2016) (unpublished) (analyzing Defendant's arguments that the D.C. Circuit ruling would affect the outcome of the case but finding "this hypothetical chain of events far too tenuous to warrant imposing a stay); *Caudill v. Wells Fargo Home Mortg., Inc.*, Civil Action No. 5:16-066-DCR, 2016 U.S. Dist. LEXIS 89136, at *9 (E.D. Ky. July 11, 2016) ("In the absence of a clear benefit of awaiting a decision in *ACA International*, the defendant's desire for a stay is outweighed by [the plaintiff's] interest in resolving this case, as well as the public's interest in efficient judicial proceeding."); *Richardson v. Verde Energy USA, Inc.*, 2016 U.S. Dist. LEXIS 113738, at *5 (E.D.Pa. Aug. 24, 2016); *Sliwa v. Bright House Networks, LLC*, 2016 WL 3901378, at *5 (M.D. Fla. July 19, 2016); *Mancini v. JPMorgan Chase Bank, N.A.*, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016); *Nussbaum v. Diversified Consultants, Inc.*, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016). These cases, and others, from around the country denied a stay pending rulings in cases factually similar to this one. Defendant has not met its burden to show how the *Facebook* decision will potentially affect this case. Further, Defendant's reference to stays in other proceedings pending the Supreme Court's ruling in *Facebook* is misleading as the stays in those

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY
PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

cases were as a result of the stipulation of the parties an agreed on unopposed motion or a status report before those courts. *See Young v. Bank of America N.A.*, Case. No. 4:19-cv-03867-JST (N.D. Cal., July 15, 2020) (ECF No. 30) (the Parties jointly agreed to stay the matter "for a limited time until the Supreme Court rules on the merits in *Facebook*" but there was no motion to stay filed); *see also See Beal v. Outfield Brew House, LLC*, No. 20-1961 (8th Circuit, July 14, 2020) (Entry ID: 4933647) (Plaintiff-Appellant filed an "Unopposed Motion to Hold Appeal in Abeyance" pending the ruling on *Facebook* but the parties were in accordance with a stay unlike here); *see also Hoffman v. Jelly Belly Candy Co.*, Case No. 2-19-cv-01935-JAM-DB (Dkt. No. 21) (the Parties filed a "Joint Status Report Concerning *Barr*" detailing their positions on the *Facebook* stay matter but no motion for stay was filed). Therefore, Defendant's motion should be denied.

> **B. The Reasoning of The Ninth Circuit's Ruling As To The Definition Of An ATDS is Sound And Is Unlikely To Be Narrowed By Supreme Court Review.**

Defendant's second requested stay turns on "wing and a prayer" speculation that the Supreme Court may issue a ruling that will contradict the binding Ninth Circuit precedent of *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1289, 203 L. Ed. 2d 300 (2019). The precedent of *Marks* has, not surprisingly, been universally recognized as authoritative and applied as such in this Circuit. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019)*; see also Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 U.S. Dist. LEXIS 208121, at *5 (E.D. Cal. Dec. 10, 2018) (*citing N.L. ex rel. Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *1 (E.D. Cal. Nov. 8, 2018); *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2018 WL 5298396, at *4 (D. Ariz. Oct. 25, 2018), appeal docketed, No. 18-17181 (9th Cir. Nov. 9, 2018); *Keifer v. HOSOPO Corp.*, No. 3:18-cv-1353-CAB-(KSC), 2018

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

WL 5295011, at *1 (S.D. Cal. Oct. 25, 2018)). Defendant's speculative belief that *Marks* may be overturned is simply not sufficient to grant a lengthy stay like the one requested by Defendant. Defendant's dream that *Marks* will be overturned and therefore all robocalls will now be legal does not seemed tied to reality.

Defendant also fails to address the strength of the reasoning in the *Marks* decision, which now constitutes the majority opinion on the Circuit level as to whether a device that uses stored numbers from a calling list may constitute an ATDS. In *Marks,* the Ninth Circuit answered this "stored number" question in the affirmative, determining the definition of an ATDS included "equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Marks*, 904 F.3d at 1043. Importantly, *Marks* has now been joined in this holding by two other Circuit courts, the Second and Sixth Circuits. In *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020) the court made crystal clear that "an ATDS may call numbers from stored lists, such as those generated, initially, by humans". In *Allan v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-2043, 2020 WL 4345341, (6th Cir. July 29, 2020), another well-penned opinion, the court stated they agreed "with the Second and Ninth Circuits that the structure and context of the autodialer ban support an interpretation of ATDS that would cover stored-number systems …" The *Allan* court went on to smartly illustrate why the reasoning of *Gadelhak v. AT&T Servs*., Inc., 950 F.3d 458, 460 (7th Cir. 2020) and *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1304–05 (11th Cir. 2020), the only 2 circuits who have reasoned otherwise, amounted to "really a parade of horribles." See *Allan* at 16.

Notably, in *Allan*, where the Sixth Circuit recently **denied a stay** pending the Supreme Court's determination of *Facebook*, defendant itself reasoned in its opposition to a stay that the court's denial of a stay would "further the analysis of the issue [before the Supreme Court] regardless of the outcome" and "for the next year the courts in this

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY
PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

Circuit can benefit from direction on the meaning of what is an automatic telephone dialing system for purposes of the Telephone Consumer Protection Act, 47 U.S.C. §227(a)(1), in pending and future cases." *See Allan*, Dkt. No. 44.  Following the Sixth Circuit's *Allan* decision, there is no longer a Circuit split regarding the issue of the meaning of an "automatic telephone dialing system" under the TCPA.  In fact, as the Circuit Courts currently stand, there is a 3-2 majority in favor of the *Marks* definition of an ATDS.

Here, not only does Defendant propose a stay based upon a minority position, any prediction, belief, or hope on the part of the Defendant that the Supreme Court will somehow release it of liability in this case and open the floodgates to more robocalls seems unjustified given the praise the TCPA received and the concerns of complaints from the Supreme Court in *Barr*. *See Barr*, 2020 U.S. LEXIS 3544, at *5 (" The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.").

**C. The Supreme Court's Ruling in *Facebook* Will Not Have a Dispositive Effect on This Case Because the Parties Will Still Have to Conduct Discovery and Engage in Motion Practice**

Before granting a stay pending the resolution of another case, "the Court must carefully consider the time reasonably expected for resolution of the "other case" in light of the principle that "stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *Wedgeworth v. Fibreboard Corp.*, 706 F.3d 541, 545 (5th Cir. 1983).  "[W]hether or not a stay is 'immoderate' is a function of two variable – the scope of the stay, and the reasons cited for ordering it."  *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (wherein the Court denied a stay after finding that a stay in that matter, "in all probability will remain in effect at least eighteen months,and might last for as long as five years" and was therefore, "indefinite.").

Here, Defendant contends that this action should be stayed pending the outcome of *Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511 (cert. granted July 9, 2020). However, a grant of certiorari by the Supreme Court in *Facebook* does not directly have any bearing on the current state of the law under the TCPA. *See Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015). In *Gissendaner*, the Eleventh Circuit specifically discussed the ramifications of a grant, holding, in relevant part, that

> Grants of certiorari do not themselves change the law, [and] they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied. Our decision in *Schwab v. Secretary, Department of Corrections*, 507 F.3d 1297 (11th Cir. 2007) is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari.

While Defendant argues that a stay is in the public's best interest, Defendant ignores the reality that an indefinite delay will occur as a result of awaiting a decision in the *Facebook* action which was only granted certiorari a matter of weeks ago, and may not be heard until next year. Defendant also ignores the fact that the Parties in this matter will still need to complete discovery and engage in motion practice to resolve the ATDS issue irrespective of how the Supreme Court rules in *Facebook*. It is thus deceptive that to state that *Facebook* ruling will resolve the matter and preserve resources. The discovery to examine the nature of Defendant's autodialer will have to be done regardless of the *Facebook* ruling.

In short, the issue of Defendant's ATDS equipment or platform is properly subject to discovery that will have to proceed no matter how the Supreme Court rules in *Facebook*. Defendant essentially asks this Court to assume that the Supreme Court's hypothetical outcome will apply to the ATDS at issue in this action and entirely eliminate Defendant's liability. However, for the reasons discussed herein, a stay and indefinite delay will not reduce the burden of litigation and as such this Court should decline Defendant's requested stay.

- 10 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

### D. Justice Will Be Promoted By Allowing The Case To Proceed And A Stay Would Not Simplify Any Issues or Reduce the Burden of Litigation

The issue of the definition of an ATDS has already been decided in the Ninth Circuit in *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041 (9th Cir. 2018), which continues to control the definition of an ATDS in this Circuit. Application of that decision to the facts in the present action is the only task remaining for the Court. There is no risk of "conflicting decisions," and Defendant's argument is quite speculative, as it was with its last motion for stay under *Barr*. Defendant's only argument is that the Court runs the risk of the Supreme Court issuing an order in conflict with *Marks*. But as numerous district courts in this circuit have explained, *Marks* is binding authority and the orderly course of justice dictates adhering to such binding authority until such time, if ever, it is overturned. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019)*; see also Larson*, 2018 WL 6459964 at *5 (*citing N.L. ex rel. Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *1 (E.D. Cal. Nov. 8, 2018); *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2018 WL 5298396, at *4 (D. Ariz. Oct. 25, 2018), appeal docketed, No. 18-17181 (9th Cir. Nov. 9, 2018); *Keifer v. HOSOPO Corp.*, No. 3:18-cv-1353-CAB-(KSC), 2018 WL 5295011, at *1 (S.D. Cal. Oct. 25, 2018)).

Additionally, as discussed above, the Parties will still need to complete discovery and engage in motion practice to resolve the ATDS issue in this action regardless of how the Supreme Court rules in *Facebook*. Thus, a stay will not reduce the burden of litigation and thus weighs in favor of denying a stay.

### E. The Hardship to Plaintiff Would Be Substantial And Thus Warrants a Denial of Defendant's Motion to Stay

In determining whether to stay the action, the Court must balance the "possible damage [to Plaintiff] which may result from the granting of a stay," with "the hardship

or inequity which [Defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then **Defendant must show a "clear case of hardship or inequity** in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). Defendant incorrectly argues that "Plaintiff will not suffer damage or harm if the court enters a stay." [Defendant's Motion, 6:20].

As a threshold matter, Defendant's request for a stay is presumptively inequitable because it is blatantly self-serving. Only Defendant can benefit from the stay because, as noted above, the relevant standard in *Marks* is unfavorable to its position. And, perhaps most importantly, the Defendant will benefit if a stay is granted even if *Facebook* turns out unfavorably to it, as it will have successfully delayed any liability in this case for the better part of a year.

In contrast, Plaintiff, and more importantly, the putative class, will suffer prejudice if this case is stayed for the indefinite period that is requested. *See, e.g., Izor*, 2019 U.S. Dist. LEXIS 130865, at *10 ("the stay Defendant seeks runs a serious risk of being 'essentially indefinite, since there is no clear indication that any FCC action is on the horizon.'") (citing *Larson*, 2018 U.S. Dist. LEXIS 208121, at *14 (rejecting the exact same basis for a stay and explaining how a stay could "indefinitely delay resolution" of the case); *Edwards*, 193 F. Supp. 3d at 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop*, 2016 U.S. Dist. LEXIS 2490, at *12 (concluding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate")); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 U.S. Dist. LEXIS 113125, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018) (declining to stay case under inherent authority pending issuance of FCC order).

Here, Defendant principally argues that the requested delay would not be harmful because there was some delay in the Plaintiff initially filing suit. However, this argument fails to consider that the individual injury is small in this case but the classwide injury is huge. Notably, "[t]he policy at the very core of the class action mechanism," is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)). Importantly, "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* It is thus not surprising that there might be some initial delay in a class action representative filing such a suit for their own individual injury. However, this small individual injury inflicted across millions of persons becomes substantial indeed, as does the prejudice from a delay in rectifying the incessant injurious conduct. Contrary to what is argued by Defendant, any delay will significantly prejudice Plaintiff, as Plaintiff and the putative class will continue be harmed by an unchecked allowance of Defendant's continued and ongoing use of an ATDS to contact Plaintiff and other similarly situated consumers.

Furthermore, as was s explained in *Richardson*,

> A "significant delay with unknown limits would cause them unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit. On the other hand, the defendant would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice."

*See Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 113738 at *5 (E.D. Pa. Aug. 24, 2016). Here, the stay Defendant seeks is much lengthier than the previous stay sought in *Barr* since *Facebook* will likely take more than a year to resolve as it was only recently granted certiorari on July 9, 2020 and the parties in Facebook have already been granted extensions for their briefing on the

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

merits. It is very likely that arguments will be scheduled for or after January 2021, thus an opinion will likely not be issued until May or June 2021 at earliest. Given the current national and global pandemic, it is quite possible that the opinion can be issued much later then mid 2021.Moreover, courts have held that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2017 U.S. Dist. LEXIS 117134, at *8 (E.D. Cal. July 26, 2017) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d at 1112)).

Here, Plaintiff faces severe evidentiary prejudice with an indefinite delay, as witnesses' memories may fade with the passage of time, documents and data may be lost as cellular telephone companies may not continue to hold the call records for the putative class as cellphone carriers do not maintain call records forever. *See generally Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014); *see also, Lathrop.*, 2016 U.S. Dist. LEXIS 2490, at *12 ("[p]laintiffs argue persuasively that they would suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate."); *Young v. Peraza*, No. 15-60968-CIV--COHN/SELTZER, 2015 U.S. Dist. LEXIS 101844 at *5 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 U.S. Dist. LEXIS 172713, at *15 (S.D. Cal. Oct. 18, 2017) (to require Plaintiff to remain in this indeterminate state of limbo is especially inequitable given that much of the relevant evidence Plaintiff will be interested in, such as call logs and dialer information, will be in the hands of third-parties and subject to unknown data retention policies). In addition, there is the risk that employees of Defendant may be fired, transferred, or quit, during the protracted delay. On the other hand, there is no articulable prejudice to Defendant whose obligation it is to maintain records of consent and the calls it made.

Further, the Supreme Court's recent ruling in *Barr* demonstrated why courts should be mindful when considering a request for a stay based on a supposed dispositive ruling from the Supreme Court. The previous stay in this case did not achieve Defendant's alleged goal of preventing needless litigation. To the contrary, Defendant succeeded in delaying this case to the detriment of Plaintiff and the putative class members only to immediately ask the Court for another stay immediately after *Barr*. The Court should not grant Defendant's requested stay as it relates to *Facebook*, especially considering that the delay would be considerably lengthier, far more indefinite, and thus more prejudicial to Plaintiff and the putative Class in this action.

For the reasons discussed herein, Plaintiff has shown that he and the putative class will suffer substantial prejudice if this case is stayed while waiting for a decision in *Facebook*. Therefore, Defendant's motion should be denied.

### F. Defendant Will Not Be Harmed If This Case Proceeds

Contrary to Defendant's motion, Defendant will not be prejudiced in comparison to Plaintiff by allowing this case to proceed. Defendant would experience no harm by engaging in discovery that it would be required to do regardless of the Supreme Court's decision in *Facebook*. Regardless of the decision in *Facebook*, the parties in this action will still have to conduct discovery and engage in motion practice. Defendant's motion asks this Court and Plaintiff to circumvent warranted discovery and rely solely on its word on what ATDS system it uses, while Defendant has not provided any documentation to Plaintiff related to the ATDS system or platform it utilized in relation to Plaintiff and this action.

Defendant cannot claim it will be subject to inconsistent rulings if a stay is not granted because its belief is speculative, like it was with *Barr*, since courts in this Circuit have consistently defined an ATDS already, and discovery and motion practice will occur irrespective of the ruling in *Facebook*. As stated above, many district courts in this Circuit have explained that *Marks* is binding authority regarding the definition

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

of an ATDS under the TCPA, and district courts within this Circuit within must follow that decision as there is no authority to await a ruling by the Supreme Court. *See Duguid*, 926 F.3d at 115; *see also Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000).

The FCC has explained that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the ATDS issue in 2003 and 2008. 2015 FCC LEXIS 1586, *28. Based on the Supreme Court's praise of the TCPA and case law, it is likely that the Supreme Court will uphold the Ninth Circuit's definition of an ATDS, particularly given the supporting decisions from other circuits.

## IV. CONCLUSION

It is well established that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Based upon the foregoing, Defendant has fallen far short of this standard. The immoderate stay requested by Defendant is indefinite and without needed discovery there is presently little reason to believe that the ultimate ruling in *Facebook* will have a dispositive impact on this case. For these reasons, and the reasons discussed above, Plaintiff respectfully requests that Defendant's Motion to Stay Litigation and Discovery be denied in its entirety.

DATED this 3rd day of August 2020.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Gustavo Ponce
GUSTAVO PONCE, ESQ.
6069 S. FORT APACHE ROAD, SUITE 100
LAS VEGAS, NEVADA 89148
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on August 3, 2020, the foregoing Reply was served via CM/ECF to all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By: /s/ Gustavo Ponce
Gustavo Ponce, Esq.
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

- 17 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY LITIGATION AND DISCOVERY PENDING U.S. SUPREME COURT'S DETERMINATION ON MEANING OF ATDS UNDER 47 U.S.C. § 227(a)